# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MONIQUE CROSS and AMERICA
THOMAS, on behalf of themselves and all
other persons similarly situated, known and
unknown,

      Plaintiffs,

v.

AMC DETROIT, INC.,

      Defendant.
_____/

Case No. 18-11968

Honorable Nancy G. Edmunds

## ORDER AND OPINION DENYING PLAINTIFFS'
## AMENDED MOTION FOR CONDITIONAL CERTIFICATION [18]

Pending before the Court is Plaintiffs' motion for conditional certification and court approved notice pursuant to 29 U.S.C. § 216(b). (ECF No. 18.) Plaintiffs move the Court to conditionally certify a collective action for unpaid wages under § 216(b) of the FLSA and approve certain notice procedures. Defendant opposes conditional certification. On May 09, 2019, the Court held a hearing in connection with the motion. For the reasons set forth below, the Court **DENIES** Plaintiffs' motion.

### I.    Background

This is an action for unpaid wages brought under the Fair Labor Standards Act and filed as a putative collective action. Plaintiffs are bartenders at the Buffalo Wild Wings restaurant located at 1218 Randolph Street, Detroit, Michigan 48226. Each BWW is independently owned or locally operated. Defendant AMC Detroit Inc. is the owner of this particular Buffalo Wild Wings. Plaintiffs are both employees of AMC Detroit.

1

As bartenders, Plaintiffs are paid an hourly wage rate which is below the minimum wage, plus a tip credit. Plaintiffs allege that they and all bartenders at this particular BWW spend in excess of twenty percent of their time performing untipped cleaning duties in addition to performing their tipped duties as bartenders. Plaintiffs assert that the FLSA prohibits Defendant from taking a tip credit and paying Plaintiffs sub-minimum wages for this untipped cleaning work. The focus of Plaintiffs' claim is that they and the other bartenders spend a significant amount of time—in excess of twenty percent of their shifts—washing dishes and performing other tasks that they contend are not part of their tipped duties. Plaintiffs allege that Defendant in essence requires all bartenders to perform the duties of both bartenders and janitors. Plaintiffs claim that Defendant's failure to pay its bartenders a minimum wage without relying on the tip credit for performing untipped tasks violates the FLSA. As such, Plaintiffs seek a conditional certification of a collective action on behalf of all employees of Defendant AMC Detroit who worked as bartenders at Defendant's BWW location in the past three years.

On June 21, 2018, Plaintiffs filed their original complaint initiating this putative collective action. Plaintiffs' original complaint named Diversified Restaurant Holdings as the defendant.[1] Because Defendant AMC Detroit, and not DRH, is Plaintiffs' employer, the parties stipulated to dismissing DRH from this action and substituting AMC Detroit as the defendant. On August 15, 2018, the Court held an initial scheduling conference and ordered the parties to conduct limited discovery relating to conditional certification. The parties conducted some document discovery, including exchanging interrogatories, but no depositions have been taken. On February 27, 2019 Plaintiffs filed their renewed

---

[1] DRH is a publicly traded holding company that licenses several restaurants to other legal entities, including Buffalo Wild Wings restaurants.

motion for conditional certification. On March 01, 2019, Plaintiffs filed an amended version of their motion for conditional certification, which is currently pending before the Court.

## II. Standard

Section 216(b) of the FLSA permits individuals to sue on "their own behalf and for 'similarly situated' persons." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). In order to proceed as a "collective action," the plaintiffs must be actually similarly-situated and all plaintiffs must affirmatively opt into the litigation. *Id.* (citing 29 U.S.C. § 216(b) and *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)). This is in contrast to "the opt-out approach utilized in class actions under Fed. R. Civ. P. 23." *Id.*

Traditionally, courts in the Sixth Circuit follow a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated" for the purposes of the statute's requirements. *See Comer*, 454 F.3d at 546. The first, or "notice" stage, takes place at the beginning of discovery with a focus on determining whether there are plausible grounds for the plaintiffs' claims. *Id.* If so, the plaintiffs are permitted to solicit opt-in notices, under court supervision, to potential plaintiffs such as current and former employees of the defendant. *Id.* The second stage occurs after "all of the opt-in forms have been received and discovery has concluded." *Id.*

The first stage is "fairly lenient," generally requiring only that plaintiffs show a colorable basis for their claim that a class of similarly situated plaintiffs exists. *White v. MPW Indus. Serv., Inc.*, 236 F.R.D. 363, 366-67 (E.D. Tenn. 2006); *Olivo v. GMAC Mortg. Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004). Some district courts in the Sixth Circuit have held that this burden can be met solely upon allegations in the complaint, *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996) (citation omitted), while others

3

have required a "modest factual showing." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595-96 (S.D. Ohio 2002) (quotation and citation omitted).

On the other hand, the second-stage review is understandably more stringent as it occurs after the receipt of completed opt-in notices and completed discovery. *Comer*, 454 F.3d at 547. In determining whether the class members are similarly situated at the second stage, courts generally consider: (1) the factual and employment settings of the individual plaintiffs; (2) the likely defenses that appear to be individual to each plaintiff; and (3) the degree of fairness and the procedural impact of resolving the claims collectively. *See Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 WL 553722, at *3 (E.D. Mich. Feb. 21, 2012). At this later stage, the district court has much more information upon which to make that decision and it employs a stricter standard. *Id.* The analysis at the second stage is more akin to class certification under Fed. R. Civ. P. 23, but the Sixth Circuit has stated that it involves a less stringent criteria than Rule 23. *See O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016).

However, when the parties are afforded the opportunity to conduct discovery before seeking conditional certification, such as in the case before this Court, courts have employed different approaches in deciding motions for conditional certification. *See Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011) (discussing the "difficult time" courts have had attempting to craft an intermediate, or hybrid, standard that falls between the lenient first-stage and the strict second stage review). The majority of district courts in the Sixth Circuit have applied a "heightened" or "more restrictive" —

but not stringent — standard, which is sometimes referred to as the "modest-plus" standard. *See, e.g., Swinney v. Amcomm Telecommunications, Inc.*, No. 12-12925, 2013 WL 4507919, at *3 (E.D. Mich. Aug. 23, 2013); *Wheeler v. City of Detroit*, 2012 WL 1119300, at *3 (E.D. Mich. Apr. 3, 2012); *Neff v. U.S. Xpress, Inc.*, 2013 WL 4479078, at *3 (S.D. Ohio Aug. 20, 2013); *Lankford v. CWL Investments, LLC*, 2014 WL 3956184 at *4 (E.D. Mich. Aug. 13, 2014); *Byers v. Care Transp., Inc.*, No. 13-CV-15174, 2016 WL 4771328, at *3 (E.D. Mich. Sept. 14, 2016).

In *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819 (N.D. Ohio 2011), the court described the requisite showing under the heightened "modest-plus" standard. *Id.* at 826-27. Under this "modest-plus" standard, the court compares the allegations set forth in the plaintiffs' complaint with the factual record assembled through discovery to determine whether the plaintiffs have made a sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exists. *Id.* at 827. In other words, the court reviews whether the plaintiffs have "advanced the ball down the field" — showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs. *Id.* "Plaintiffs need not have moved the ball far down the field, but they need to have shown some progress as a result of the discovery as measured against the original allegations and defenses." *Id.* "How much progress Plaintiffs have made will be considered in conjunction with Defendant's evidence and in the context of Plaintiffs' unshifting burden to prove their claims." *Id.* However, the Court will not weigh the relative merits of the parties' claims at this conditional certification stage. *Id.* "A full and complete merits review is best preserved for the detailed and strict review conducted at stage two." *Id.*

Defendant urges the Court to apply the modest-plus standard here because the parties engaged in discovery. While neither party provides significant detail about the status of discovery in this case, it is clear that the parties conducted some discovery. In addition, the parties were afforded almost six months to conduct discovery related to the issue of conditional certification. Based on the record before the Court and the statements of counsel at the hearing, the Court finds the parties had an ample opportunity to obtain substantial information about Defendant's policies and procedures and Plaintiffs' claims. Accordingly, the Court will employ the modest-plus standard and determine whether Plaintiffs "advanced the ball down the field." The Court will consider whether Plaintiffs produced some evidence indicating they and potential claimants are similarly situated as victims of a common plan or policy that violated the FLSA.

### III. Analysis

#### A. Conditional Certification

The FLSA does not define "similarly situated." And generally, plaintiffs must show "only that [their] position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47. Plaintiffs can meet this burden by showing that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* at 585. "Showing a unified policy of violations is not required, though." *Id.* at 584. Plaintiffs can also show their claims are "unified by common theories of defendant's statutory violations, even if the proofs of those theories are inevitably individualized and distinct." *Id.* at 585.

Here, Plaintiffs assert they present sufficient evidence to establish that the putative class members are similarly situated even under the modest-plus standard. Plaintiffs rely

6

primarily on their own declarations, which they claim contain substantially the same allegations. In their briefs, Plaintiffs state their declarations establish that: (1) they both worked as bartenders at AMC Detroit's Buffalo Wild Wings restaurant; (2) they spend a significant portion of their work week performing tasks unrelated to their tipped occupation as bartenders; (3) they were paid a sub-minimum tipped wage rate for the hours they spent in their dual jobs as bartenders and janitors; and (4) based on their conversations with and observations of other bartenders, they had personal knowledge of other bartenders who were allegedly required to work dual jobs as bartenders and janitors, and that these other bartenders were paid the sub-minimum tipped wage rate while performing their non-tipped duties.

In addition to their own declarations, Plaintiffs submit two other pieces of evidence. First, Plaintiffs present the affidavit of Krystal White, a human resources business partner for Diversified Restaurant Holdings, Inc., to establish that AMC Detroit was responsible for setting its own cleaning and pay policies for its bartenders. Second, Plaintiffs submit BWW cleaning lists that they contend evidence uniform cleaning policies to which all bartenders employed by Defendant are subject. Plaintiffs argue this evidence collectively establishes that all bartenders employed by Defendant are subject to the same cleaning and pay policies, and therefore Plaintiffs are similarly situated to the putative collective action members for the purposes of notice pursuant to 29 U.S.C. § 216(b).

Defendant raises a number of arguments as to why Plaintiffs are not similarly situated to the putative collective action members. Most prominently, Defendant contends Plaintiffs are not similarly situated with other bartenders because there is no widespread discriminatory policy or plan in place. Defendant points out that its pay

policies require bartenders to clock-in at the standard minimum wage rate when performing pre-opening or post-closing untipped work, and to clock-in at the sub-minimum wage rate only when doors are open and tipped work is being performed. According to Defendant, the majority of the alleged untipped tasks identified by Plaintiffs are tasks that should be performed at the standard minimum wage rate under Defendant's pay policies. Defendant also notes that its "Time Record Policy" prohibits employees from performing "off the clock" work and provides a procedure for employees to address and receive reimbursement for any improper pay deduction, including situations where an employee is asked to perform work outside the scope of duties listed on his or her job descriptions. To this end, Defendant submits time records for both Plaintiffs which reflect that each Plaintiff did in fact clock-in at minimum wage for an hour or two during their respective shifts.

Plaintiffs' response on this issue is somewhat muddled. Plaintiffs argue that they need not establish an actual discriminatory policy or plan, but rather they must only establish a common theory of Defendant's statutory violations. But Plaintiffs do not expressly state what the common theory here would be. Reading between the lines, and based on the argument of counsel at the hearing, the Court interprets Plaintiffs argument to be that notwithstanding Defendant's policy of paying minimum wage for pre-opening and post-closing duties, Plaintiffs are required to perform non-tipped duties throughout their workday, in addition to their pre-opening and post-closing duties, which violates the FLSA. Plaintiffs also appear to be arguing that even though a dual-wage policy may exist, it is not being followed as a general practice such that bartenders do not clock-in at the

8

standard minimum wage during the pre-opening or post-closing periods as instructed by Defendant's written policy.

This second position, while not discussed in the briefs, comes from Plaintiffs' declarations in which they describe their respective understanding of Defendant's written policy of paying tipped employees the standard minimum wage for performing various cleaning duties during the pre-opening and post-closing periods.  Plaintiff Cross states she is aware that Defendant has a policy of paying all servers the standard minimum wage rate for their opening duties, but states she does not believe the policy applies to bartenders.  Plaintiff Thomas states that while bartenders used to follow the policy of clocking-in at minimum wage during closing, in practice, they no longer do because Defendant's pay system requires manager approval to switch to the standard minimum wage rate and managers are usually unavailable to assist with this change.  Thus with respect to the pre-opening and post-closing cleaning duties, Plaintiffs' case appears to be premised on a disconnect between the written policy and what happens in practice.

Plaintiffs, however, present no direct evidence of this disconnect.  Instead, they rely entirely on circumstantial evidence to suggest that Defendant and its management condoned the practice of ignoring its written policy.  For example, Plaintiff Cross describes two paychecks where she allegedly was not paid a minimum wage hourly rate.  But she does not provide copies of these paychecks, and does not state whether she worked in an opening or closing shift during that pay period.  Plaintiffs actually do not submit any documentation regarding their pay, other than their generalized statements in their declarations.  And other than this anecdotal evidence about Plaintiff Cross's own experience, neither Plaintiff presents any competent evidence of any other bartender not

9

being paid a minimum wage rate for his or her opening or closing duties. In contrast, Defendant provides evidence rebutting Plaintiffs' allegations of an across the board failure to follow the written policy. For example, Defendant submits the affidavit of Walt Barnes, another BWW bartender, who states that all bartenders are trained on the policy of clocking-in at minimum wage for opening and closing duties, and that all bartenders do in fact follow the policy. Defendant also submits time records for both Plaintiffs, which show Plaintiffs routinely received minimum wage for their pre-opening and post-closing work.

Focusing on the pre-opening and post-closing cleaning duties, Defendant argues conditional certification is not proper because of the individualized nature of Plaintiffs' claims and their failure to establish that all bartenders working all shifts under all managers adhere to an alleged unofficial company-wide policy of violating an otherwise FLSA compliant policy. Defendant points to *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 966 (W.D. Mich. 2009) to support its position. In *Pacheco*, the named plaintiffs claimed they were victims of the defendant's uniform practice of not paying hourly employees for time spent donning and doffing their protective equipment at the start of their shift and before and after their lunch breaks despite the existence of a written policy that expressly required payment for all donning and doffing time. *Id.* at 962. In analyzing whether the named plaintiffs were similarly situated to the putative class members, the court considered whether there was any evidence establishing that the defendant's common or uniform practice was to not follow its formal written policy. *Id.* Ultimately, the court denied conditional certification finding that there was no direct evidence of a policy or practice to ignore the company's written policy and that any failures

to follow the written policy would be unique to specific employees, departments, and supervisors. *Id.* at 964-66.

Following *Pacheco*, Plaintiffs would not be entitled to conditional certification of their collective action based solely on the untipped duties performed during their pre-opening and post-closing shifts. Plaintiffs have not "advanced the ball down field" with respect to this claim, and they present no competent evidence of any similarly situated employees who fail to follow Defendant's written policies. Plaintiffs also fail to present any competent evidence of a company-wide policy of ignoring Defendant's written policy that applies to all bartenders, all shifts, and all managers. *See Pacheco*, 671 F. Supp. 2d at 962-66. *See also Thompson v. Speedway SuperAmerica LLC*, No. 08-CV-1107(PJS/RLE), 2009 WL 130069, at *2 (D. Minn. Jan. 20, 2009) (denying conditional certification where named plaintiffs failed to establish the existence of a policy to violate the written policy).

But Plaintiffs' allegations are not limited to untipped duties performed during the opening and closing periods such that proof of an unofficial policy of violating Defendant's written policy is necessarily required for Plaintiffs to proceed with conditional certification of their proposed collective action. As noted, Plaintiffs assert more generally that they and the other bartenders are required to perform a significant amount of untipped tasks throughout their shifts while receiving a tipped wage. The issue remaining then is whether Plaintiffs are entitled to conditional certification of their broader claim that Defendant's bartenders spend in excess of twenty percent of their time performing untipped tasks. In other words, the Court must consider whether Plaintiffs satisfied their modest-plus burden of establishing that they and the other BWW bartenders are similarly situated such that

they are required to perform untipped tasks during opening hours while receiving a tipped wage potentially in violation of the FLSA.

Based on the record before the Court, Plaintiffs fail to satisfy their burden of producing some competent evidence of other similarly situated employees. The Court begins its analysis with the evidence obtained by Plaintiffs in discovery to determine whether they made "some progress as a result of the discovery as measured against the original allegations and defenses." *See Creely*, 789 F. Supp. 2d at 827. As noted, Plaintiffs submit two pieces of evidence obtained in discovery: (1) the affidavit of Krystal White, and (2) the BWW cleaning lists. The Court agrees with Plaintiffs that Krystal White's affidavit establishes Defendant was responsible for setting its own cleaning and pay policies. But the declaration does not establish that all bartenders working all shifts under all managers at this particular BWW were subjected to the same cleaning responsibilities. It also does not establish the existence of a policy that violates the FLSA. Krystal White's affidavit, by itself, does not provide evidence that other bartenders employed by Defendant are subject to the same FLSA violating policies and practices alleged by Plaintiffs.

The BWW cleaning lists likewise do not establish that other bartenders are required to perform untipped work throughout their shift while being paid a tipped wage in violation of the FLSA. As an initial matter, there is no indication the cleaning lists were actually utilized by Defendant. The lists do not reference Defendant or its specific location and there is no testimony by Plaintiffs, or any employee, that the lists are actually used by Defendant or its employees. That each BWW location is responsible for establishing its own cleaning and pay policies creates additional questions as to whether the

bartenders employed by Defendant used or followed these generic cleaning lists. Moreover, the lists do not support the allegation that other bartenders performed untipped cleaning tasks at a tipped pay rate in violation of the FLSA. For example, Exhibit H states the cleaning tasks are "performed by the non-tipped employee OR a bartender/server paid minimum wage." The lists do not establish that other bartenders employed by Defendant are required to spend more than twenty percent of their time performing untipped tasks at a tipped rate in violation of the FLSA.

Even under the more lenient, pre-discovery, standard, Plaintiffs fail to satisfy their burden to produce a modest amount of evidence of similarly situated employees. Plaintiffs rely primarily on their own declarations as evidence of other similarly situated employees. The Court acknowledges that one or two declarations may be sufficient to support conditional certification in some cases, but here, Plaintiffs' declarations are not.

Plaintiffs' declarations contain a number of technical deficiencies. Both declarations were executed before the filing of this lawsuit, are not based on evidence obtained in discovery, and cannot be considered as evidence that "advances the ball" beyond the original allegations in the complaint. Both declarations state Plaintiffs are employed by Diversified Restaurant Holdings, Inc., and discuss the policies of Diversified Restaurant Holdings. But Defendant AMC Detroit, Plaintiffs' actual employer, was substituted as defendant in this lawsuit for Diversified Restaurant Holdings, and Plaintiffs do not explain why or how this formal substitution also somehow amends their stated testimony. Finally, Plaintiffs' unsworn declarations are not admissible evidence. Under 28 U.S.C. § 1746, a party may use unsworn declarations in lieu of a sworn affidavit if the declaration is: (1) in writing, (2) dated, and (3) verifies that its contents are "true under

penalty of perjury." 28 U.S.C. § 1746.  Here, neither declaration contains the phrase "under penalty of perjury".  *See Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994) ("Unsworn declarations are permitted to be used as evidence only if 'subscribed ... as true under penalty of perjury .... ' ") (quoting 28 U.S.C. § 1746).  Given the explicit language of the statute, these technically deficient declarations are technically improper for consideration by the Court.  *See Hogan v. Rent-A-Center, Inc.*, 228 F.Supp.2d 802, 806 n. 8 (S.D. Ohio 2002).

Plaintiffs' declarations are also substantively deficient.  Plaintiffs' declarations do not establish that they have personal knowledge of other similarly situated bartenders employed by Defendant.  Contrary to arguments made in their briefs, the declarations do not describe any conversations between Plaintiffs and other employees about the alleged performance of untipped work throughout their shifts.  Plaintiffs do not provide any competent evidence establishing that other bartenders do not follow Defendant's written policies, and Plaintiffs do not provide any competent evidence demonstrating that other bartenders spend more than twenty percent of their time performing untipped tasks.

Plaintiffs' declarations similarly fail to establish a company-wide FLSA violating policy.  Although the Court agrees with Plaintiffs that the existence of a written policy is not required to obtain conditional certification, Plaintiffs must still produce some evidence to support their contention that other employees are not following Defendant's policies, or that Defendant's cleaning policies violate the FLSA.  But Plaintiffs fail to produce sufficient credible evidence of any policy or practice in place that would violate the FLSA.

Plaintiffs identify a number of cleaning tasks they contend constitute untipped work, but they do not specify which tasks are performed in the pre-opening and post-

closing periods and which tasks are performed throughout the workday at a tipped wage. Additionally, Plaintiffs' declarations do not explain whether each bartender is required to devote the described time associated with a given task, or whether the time ascribed to a specific task is reflective of the collective effort on a task, or the amount of time one bartender spends on the task. For example, Plaintiff Cross states detailing the keg room is a weekly task that she, and all the bartenders are required to perform. She says this cleaning task is only performed once a week by bartenders. She claims she spends 5.26% of her time per week, or 60 minutes, on this task. But Plaintiff Thomas also includes detailing the keg room as one of her weekly tasks. And Defendant's witness, Walt Barnes, states he is the only bartender responsible for detailing the keg room. The declarations are conflicting. How is it possible for both Plaintiffs, and Barnes, and all other bartenders to each spend an hour a week performing a task that is only performed one time in a week for one hour? Even assuming as true Plaintiffs' claims that they both actually perform all of the tasks identified in their declarations, Plaintiffs do not submit competent evidence suggesting that other bartenders also perform those tasks during their shifts while being paid a tipped wage.

Plaintiffs also provide conflicting explanations about Defendant's pay policy for the pre-opening and post-closing periods. As discussed above, Plaintiff Cross states that she is aware Defendant has a policy of paying all servers minimum wage for their opening duties, but states she does not believe the policy applies to bartenders, and she has never clocked-in at the minimum wage rate. Plaintiff Thomas states that while bartenders used to follow the policy of clocking-in at minimum wage during closing, in practice, they no longer do because Defendant's pay system requires manager approval to switch to

15

minimum wage pay and managers are usually unavailable to assist with this change. Not only are these two statements inconsistent, but they are refuted by the pay records submitted by Defendant. Defendant's payroll records reflect that both Plaintiffs clocked-in as minimum wage employees during the times they worked as openers or closers, and were paid both categories of wages for a given work day. In addition, it seems unlikely that there would be other bartenders who could claim, like Plaintiff Cross, that they were unaware of the dual rate policy given that the cleaning checklists submitted by Plaintiffs expressly state the cleaning duties are to be performed at the untipped standard minimum wage rate.

Without regards to Plaintiffs' credibility or the merits of Plaintiffs' allegations, Plaintiffs' contradicting statements and substantively deficient evidence prevent a finding that there are other similarly situated employees. Plaintiffs are correct that the Court does not determine the merits or legality of Defendant's policies at this stage. But Plaintiffs must still do more than submit conclusory allegations. *See Langlands v. JK & T Wings, Inc.*, No. 15-13551, 2016 WL 4073548, at *4 (E.D. Mich. Aug. 1, 2016) (denying conditional certification in nearly identical case and finding that conditional certification was not appropriate based solely on declarations of two employees containing conclusory allegations). Because Plaintiffs fail to satisfy their modest burden to produce evidence of similarly situated employees and have failed to "advance the ball down the field" with respect to their claims in any meaningful way, Plaintiffs' motion for conditional certification is denied. The motion, however, is denied without prejudice. If Plaintiffs obtain sufficient evidence in discovery with respect to their own claims that would support conditional

certification, the Court will consider entertaining a renewed motion for conditional certification at that time.

IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional certification is **DENIED**.

**SO ORDERED.**

s/Nancy G. Edmunds<br>
Nancy G. Edmunds<br>
United States District Judge

Dated: June 20, 2019

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 20, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett<br>
Case Manager